Good morning. My name is David Basham. I represent the appellant in this case. Counsel, may it please the Court, we have challenged the sentence in this case on two grounds, one general and one specific. We argue the first challenge is the specific argument this morning that this the appellant was sentenced to 34 months in prison for violating his supervised release. This related to the appellant being intoxicated and passed out on a restroom floor in a McDonald's restaurant and not reporting this to his supervising officer. The 34 months he received for violating his supervised release in this case was five months over the original sentence that he received back in 2013 for the original offense. And the first argument and the challenge is that his sentence is illegal, that he was not given credit for under 1850.37d.5, that he was not given the credit that he was entitled to. Sotomayor, if we agree with you as to that, that there was a plain error by failing to deduct the amount called for in the statute, would we have to reach the second Okay. If I understand the Court right, if you are agreeing that the sentence is illegal Right. If we were to agree that there was a violation of the statute because there should have been a deduction, a subtraction of the amount of time he had previously served, wouldn't we just remand it at that point without reaching the second issue that you raise? The general issues. Well, I would say that if you give him credit for time served in this case, he served 28 months in prison for the original offense, and he came back and was violated and served 18. That is 46 months. And under 5037, he is in — can be sentenced to no longer than five years in prison. So you subtract 48 months from 60, you get 14 months. And he has served his 14 months today. Right. That's my — that's exactly — I didn't say it very well, but assuming that we agree with you about the way to read the statute, is there any need to reach any other issue in the case? No. Okay. Thank you. And we — we strenuously asked the Court to consider looking at the language of that statute. And it clearly, 5037d-5, clearly allows or mandates that the juvenile who violates his conditions of supervised release receive credit. Is that — is that a novel issue? I'm sorry, Your Honor? Is that a novel issue? Yes, it is. It — there is no reported case on it. And I believe the reason for that is that no judge has basically interpreted and implied — applied the statute the way that this judge applied it. It — I find no — no reported case on it from our research. And if you look at 5037 in basically general terms, it has four parts to it, A, B, C, and D. A involves just initially the disposition of a juvenile. B involves the probation. And that part B has no provision that allows for credit for time previously served because a person on probation has not been serving time. All the roads kind of lead to C, 2, A, and B for punishment of a juvenile under supervised release. And it allows for the lesser of five years or the maximum of the guideline range that an adult would be facing. Isn't the government's interpretation, I guess somewhat like yours, both plausible? Because the statute isn't all that clear. I believe that the statute is clear. And I believe the government's interpretation basically negates a lot of the language in the statute. It negates specifically the language in D-5. And I believe that this provision in D-5 clearly works in conjunction and is compatible with C, 2, A, and B. And I guess I should have prefaced my remarks about the clarity because the magistrate judge and the district judge reached different interpretations, didn't they? The magistrate's judge did make reference to some time that would be credited. Her calculation was incorrect, but she did give some of the time as credit, which is kind of inconsistent with the government's position or the district court's position. So your position is that this is entirely a question of statutory interpretation, that the guidelines really don't have any application here because of the fact that he's a juvenile? For this particular argument, the guidelines is not the relevant factor. Yeah. As you say, it's just a pure question of interpreting D-5 in conjunction with C, 2, A, and B. Yes. And, you know, the reason that C, 2, A, and B deals with people under 21. And so if you have two defendants, same age, same circumstance, both have done 46 months, one defendant gets his disposition hearing before he turns 21, he gets a credit. If the other defendant waits a week and now he's 21, he does not get the credit for time previously served. Well, couldn't there be a rational explanation for why Congress might want to treat someone under 21 differently from someone over 21? In other words, to put it a different way, that when someone achieves adulthood, we hold them to a higher standard of accountability than we do people under 21. If that was the reason, it certainly is kind of hidden, I believe, in the statute. Well, the statute is not a model of clarity. I know you think it's clear, but I tend to agree with Judge Lamel that this is a difficult statutory scheme to harmonize, I guess is the right word for it. I think the government's interpretation creates more problems and more complexities and ignores direct provisions in the statute. And I believe combining D-5 with C-2A and B makes for an easy application and a very consistent reading in the statute. I mean, I think you've got a good legal argument. It was clear to me from reading the transcript of the sentencing hearing that Judge Jorgensen was troubled both by the nature of the original second-degree murder, the details of that crime, the fact that your client got a relatively light juvenile disposition on that charge, and it was aggravated by the fact that he was under the influence of alcohol at the time of the crime. He clearly has a drug and alcohol substance abuse problem and has not been amenable to probation, supervision. And that seemed to be what animated the district court to say, I'm out of options here. I'm just going to warehouse him for as long as I can to protect the community. Is that a fair summary of where Judge Jorgensen was coming from? Judge Jorgensen, in my opinion, I respectfully submit, basically was following the direction of the prosecutor at the time who said, this person needs rehabilitation, and to do that, we need to incarcerate him. Well, that's not ---- I backed off of that, though. You said there's case law in the Ninth Circuit that says you can't do it for the purpose of rehabilitation, so I'm telling you that that's a hope but not a reason, and you just need to ---- because of all these other factors. And I thought she made a comment, especially on the record, which alluded to the Ninth Circuit case law to make it clear that she wasn't giving him a longer sentence so that he could enroll in, what is it, the 500-hour drug? Yeah. She did, in fact, but when I ---- she did on three other occasions. One, I'm going to do everything I can today to ensure that you're incarcerated for the lengthiest period of time so those services will be available to you. Right. But that was because he wasn't amenable to intensive supervised release on the outside. Well ---- I mean, she said that clearly on the record, did she not, Mr. Basham? Well, it's hard to say what he is amenable to. There was no exploration of basically evaluations or treatment. I believe the court basically ---- Well, he walked away from the treatment center and then he disappeared from active probation supervision. I'm ---- maybe you and I are reading the record differently. No, we're not. He is a troubled person. He has challenges. But nonetheless, under the Juvenile Delinquency Act, we believe that he's entitled to something different than what an adult would receive in this case for a supervised release violation. Thank you, counsel. You've exceeded your time, but we asked a lot of questions, so you may have a minute for rebuttal when the time comes. Thank you. May it please the Court, I'm Bob Miskell from the U.S. Attorney's Office in Tucson on behalf of the United States. Counsel, I have a question that's sort of one step removed from the statutory construction question, and that is in the sentencing hearing, the judge clearly said, and I'm looking at ER 20, at line 22, you will receive credit for all the time that you have served so far relating to this matter. And why doesn't that simply take care of the problem? I think there are two explanations for that, Your Honor. First of all, credit for time served in Federal sentencing is basically a term of art. And it's the credit that you get for the time you're in custody for the proceeding that you're in custody for, in this case, the supervised release revocation proceeding. So then the other thing is ---- So you don't think there's any ambiguity in that statement? I don't think so. The way it's usually used, actually the way it's always used by judges, credit for time served is only for the time that they are in custody on that offense or that proceeding. Moreover, it's actually the Bureau of Prisons' job to calculate credit for time served. That's not the judge's job. Well, no, but that's exactly why it seemed ambiguous to me. Well, I would ---- excuse me. Another way to approach it would be there are two issues in this case. The first is, what's the statutory maximum the judge could impose? And the second is, what sentence did the judge impose? Right. It's the judge's job to calculate the or to determine the statutory maximum. Clearly, that's not the Bureau of Prisons' function. In this case, Judge Jorgensen determined that the maximum, the statutory maximum was up to the defendant's 26th birthday. If she was going to make reductions in that sentence he imposed, she would have had to do a subtraction in the judgment. Well, she would have, but the reason I'm asking the question is that we have standard case law that says that if there is a difference between the oral pronouncement of sentence and the written judgment that follows, the oral pronouncement governs. And so we wouldn't have that case law if there were always a perfect match between what the judge said and what the written judgment looked like at the end. I would also suggest, Your Honor, if you look at the sentencing transcript as a whole, it is clear that Judge Jorgensen is rejecting that argument. She wanted to give him to both serve the purposes of sentencing. She wanted to give him up to age 20, his 26th birthday, the statutory maximum. That's – I think that's absolutely clear from the record. So if there is any ambiguity in that sentence, I think the entire transcript kind of makes it clear. And as I said before, the definition of credit for time served, that's actually a term of art that only means the time served on this specific proceeding. So you would agree with my summary that I tried to get Mr. Basham to acknowledge as to what animated Judge Jorgensen's sentence here, that basically she intended to warehouse him for as long as she could because he simply had not been amenable to any other form of supervised relief. Well, I would agree with that, except I would not use the word warehouse. I think Judge Jorgensen was determining that this defendant needed the most structure possible because of his history. Which is to take him out of the community so he can't commit further crime. Right, and to put him into a prison scenario, basically, because he failed – I agree. We'll lock him up. All right. I'll withdraw my pejorative. And then as far as the statutory interpretation, as the Court has noted, the statute is kind of perhaps badly worded, but I think it's clear it's got two sections or not sections, two parts. The first part applies to juveniles, which is defined by another statute as somebody who is under the age of 21 at the time of the proceeding. And that statute says – that part of the statute says you look at 5037C less any term of official detention. Then there's a second part of the statute that says if the juvenile is over age 21 at the time of the revocation proceeding, again, you look at 5037B, but it does not contain that language, less any term of official detention. It actually has other limitations. So if you look at the statute, Judge Jurgensen's interpretation of the statute certainly was plausible. And as I agree with Mr. Basham, there were no cases that interpret this language one way or the other that I could find either. So in considering the fact there was no objection, I think that Judge Jurgensen's sentence should be affirmed. Okay. So let me make sure I get the record straight. At the time he was found intoxicated and passed out in the bathroom of the McDonald's by the Pima County Sheriff's deputies, he was over 21 years old. Yeah, he was 22 at that point. So it really doesn't matter with regard to what his age was at the time of the disposition hearing. He was clearly past 21 no matter how you cut it. Right. Exactly. Okay. And then just one further question. Judge Jurgensen did state affirmatively that she was aware that she could not give an increased sentence based on the hope of getting the defendant into a drug rehabilitation program. I mean, she gave the sentence because, and her quote is, I'm giving you the maximum term of imprisonment because I think that is the least restrictive means to accomplish doing exactly what a judge should do at a judicial disposition hearing, unless the Court has any further questions. I just wanted to be clear that in your, from your position, the last clause of Section 537d5 alters the operation of the second sentence by implicitly eliminating credit for previously ordered terms of official detention? Yes. My analysis is by repeating the reference to 5037a and then imposing different limitations on it that are not in the top part and eliminating the limitation that is in the top part of the statute, that, yes, it does, it does not, the top part of the statute does not carry through as the government's position. Well, that is one way to read it. The other way to read it is that the beginning part of the section applies across the board, and then there are some tweaks at the end that say, oh, by the way, you can't continue beyond a certain birthday. But the problem with that reading in the government's view, Your Honor, is that the first part of the statute clearly is, says it's to sentence or to impose a disposition on a juvenile. At this point, the defendant is not a juvenile under that definition. Yeah, but under the Act, he's still under the Federal Juvenile Act. But the statute covers that. He's still treated as part of, because he was originally a juvenile at the time of the offense, but they have a specific provision for somebody who is, and they use kind of the oxymoron phrase, a juvenile over the age of 21. But, counsel, the sentence in question doesn't say that. It says the term of official detention, which is authorized upon revocation of juvenile delinquent supervision, shall not exceed the term authorized in section blah, blah, blah, unless any term of official detention previously ordered. So that sentence doesn't refer to age. It doesn't refer to juveniles. It refers to how much detention is authorized upon revocation. So why wouldn't that just apply across the board to all revocation and all terms of official detention? Because I think if you look at the first sentence of D-5, which does say if a juvenile violates, I think that is, again, as I see the breaking point in the statute, it's if the first part is dealing with a juvenile who, by definition, is under age 21. The second part is dealing with somebody who's over the age of 21. Sotomayor, except at the end of it, obviously, it thinks of juveniles over the age of 21. So if you read the section as a whole, the word juvenile has to have the same meaning throughout. And it's clear that Congress thought you could be over 21 and still be considered a juvenile for purposes of this section. That's the difficulty I have with your reading. The definition of juvenile in 5031 is somebody who's under the age of 18 at the time of the offense or somebody who's under the age of 21 at the time of the proceedings. So you don't believe that congressional intent here tried to treat juveniles over 21? The intention was to treat them more generously than similar-situated adults? I think the intent of Car – I actually think what Congress was doing was using poorly crafted language to have a provision for people over the age of 21 because they don't meet the definition of juvenile. And they use the, like I said, awkward phrase of juvenile over the age of 21. That's right. But normally, we would read one section, which this is, subsection 5, as a whole. And if you do that, it's clear that juvenile doesn't just mean someone under the age of 18 because it says juveniles over the age of 21. So if that first part of the section seems to cover anyone who is under juvenile delinquent supervision. This may be a discussion I will continue at conference with my colleague, but it seems to me that that reading ignores the sentence in the middle of subdivision 5 that says the application of sections 5037C2A and B shall be determined based upon the age of the juvenile at the time of the disposition of the revocation proceeding. I read that to say there's a difference based on age between the application of C2A and B. I think that's correct. And it's also – I think it's plausible that Congress didn't want to limit a judge's ability to impose a sentence on a person who was originally convicted as a juvenile who is approaching his mid-20s and still isn't on the right Also, just as a final point, Judge Jurgensen's reading of the statute or interpretation of the statute clearly was plausible, and in the absence of case law to the contrary, since this is a plain-error review, she should be affirmed. Thank you. Thank you. You may have a minute for rebuttal. Is it plain-error review, counsel, or de novo? How does it make a difference? Pardon me, sir? Is it plain-error review or de novo, or does it make a difference? Your Honor, I don't believe it makes a difference. We argued de novo under the case law that supports that. We believe that it's an illegal statute and it's prejudicial and it's reversible just per se. If you follow our argument and the challenge is successful, it's a legal sentence and it's reversible under plain-error. I would say that there is no law distinguishing juveniles over 21 from the Juvenile Delinquency Act, and I don't know of any. Also, there was no connection in the record between the purported dangerousness here and the reason to isolate this gentleman. Sure there is. She cited the substance abuse problem, that that was present at the time of the murder and has been a consistent theme throughout the defendant's subsequent violations of supervised release. To a homicide back in 2013. But particularly, counsel, following up on Judge Talmadge's question, particularly in the context where after each release from detention, including a prior supervised release service and then another violation of supervised release, and I'm using that term, delinquent supervision, it was in the matter of a few months after each. I mean, the record is showing a juvenile who is just not complying with conditions imposed by the court on multiple occasions. I know that you made an argument concerning the rehabilitation issue, but just separately from that, Judge Jogerson seemed to have been straining to find some remedy to get him relief. And perhaps, you know, you say she might have imposed a wrong sentence because she didn't get credit for time that he proved to serve while in of, as you put it, just following the prosecution side. I just don't see that here. Do you understand my point? I understand your point. I believe it is our contention that he basically was warehoused, that rehabilitation was thrown out, and that the judge completely gave up on it. Well, it's a much, what is it, the RDAP program is a much more intensive supervised drug abuse treatment, which does not permit the offender to walk away from the treatment center as your client did when he was at the private facility in Tucson. We're not denying that this appellant has alcohol substance abuse issues. We are just saying that he is in prison for that reason, and we believe that there could have been other alternatives explored. What would the other alternative be? More intensive supervised release, more evaluations. But he absconded from supervised release. He went for months without any contact whatsoever with the probation officer. Well, he made a very honest statement to the court that said he was ready to change his ways. But this is the third offense with this offender. I mean, how many times does the court have to listen to, I promise, give me a second chance? Well, this offense involved being intoxicated and passed out on a restroom floor. That's what he received 34 months for. I know, counsel, I may be reading between the lines, but it seems to me that he has admitted to his credit his violations in the past. And to his credit, in so admitting it, there really was no objection at the time of this sentence. Now, that doesn't say he's waived it now to raise this issue that you're raising for him, but he seems like he's crying out for help. I thought the judge here was trying to fashion something to give him help. That may be a proper interpretation. I believe that he was kind of opening up and admitting his mistakes. But again, I don't see how why that justifies the extreme maximum prison term in this case of 34 months. Thank you, counsel. You've exceeded your time. We appreciate it. The case just argued is submitted, and the arguments of both counsel have been very helpful.
judges: Graber, Tallman, Lemelle